# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

---

CHRISTINA RENE JACKSON,

                                                Plaintiff,                    DECISION AND ORDER

                        -vs-                                                        15-CV-6069-CJS

CAROLYN W. COLVIN, *Acting Commissioner of So-cial Security*,

                                                Defendant.

---

## APPEARANCES

For the Plaintiff:                       Kenneth R. Hiller, Esq.
                                              Ida M. Comerford, Esq.
                                              Law Offices of Kenneth Hiller
                                              6000 North Bailey Avenue
                                              Suite 1A
                                              Amherst, NY 14226
                                              (716) 564-3288

For the Defendant:                   Maria Pia Fragassi Santangelo (*on brief*)
                                              Sandra M. Grossfeld (*on brief*)
                                              Social Security Administration
                                              Office of General Counsel
                                              26 Federal Plaza, Room 3904
                                              New York, New York 10278

                                              Grace M. Carducci, A.U.S.A. (*oral argument*)
                                              Kathryn L. Smith, A.U.S.A. (*oral argument*)
                                              Office of the United States Attorney
                                              for the Western District of New York
                                              100 State Street, 5th Floor
                                              Rochester, New York 14614

## INTRODUCTION

**Siragusa, J.** This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner" or "Defendant"), which denied the application of Christina Rene Jackson ("Plaintiff") for Social Security Disability Insurance ("SSDI") benefits and Supplemental Security Income ("SSI") disability benefits. Now before the Court is Plaintiff's motion for judgment on the pleadings, Aug. 24, 2015, ECF No. 8, and Defendant's cross-motion for judgment on the pleadings, Dec. 18, 2015, ECF No. 11. Following oral argument, the Court gave Plaintiff an opportunity to submit an opinion from her treating psychiatrist, Prakash P. Reddy, M.D. ("Reddy") Instead, Plaintiff submitted a retrospective assessment by a social worker. Having considered the issues raised in the papers, and at oral argument, Defendant's motion for judgment on the pleadings is granted and Plaintiff's motion for judgment on the pleadings is denied.

## BACKGROUND

At the time of the hearing on May 17, 2013, Plaintiff, who was 33 years of age, had obtained an individualized education program diploma ("IEP") in 1999 and had undergone specialized job training as a certified nursing assistant ("CNA"). R. 189, 194. At the hearing, Plaintiff testified she stopped working because she was attending classes three days a week at "PROS,"[1] for her mental illness. R. 49 ("I am attending classes at PROS

---

[1] New York State Office of Mental Health operates a Personalized Recovery Oriented Services (PROS) which "is a comprehensive recovery oriented program for individuals with severe and persistent mental illness. The goal of the program is to integrate treatment, support, and rehabilitation in a manner that facilitates the individual's recovery. Goals for individuals in the program are to: improve functioning, reduce inpatient utilization, reduce emergency services, reduce (continued)

[phonetic]. I don't remember what PROS stands for. It's a place where you get help for your mental illnesses."); R. 50 ("I go three days a week right now."). The Administrative Law Judge ("ALJ") also asked her whether anything else kept her from working, and Plaintiff responded that back pain did, and that she was "working on losing weight to help [her] with the back pain." R. 51. She also testified that she felt "like [she] needed to get [herself] together so that [she] can maintain a job and stop going from job to job to job." R. 51. She related that the job she had at Saint Anne's Home for the Aged was the longest one she held. R. 51, 179. However, she said that she was

> written up so many times at Saint Anne's because I guess the manager or the bosses could not understand me. I always needed them to repeat things. And sometimes, I showed up to work when I was not scheduled to work. sometimes, I showed up OR did not show up when I was scheduled to—I am not sure what I am saying. I would show up to work when I am not scheduled to work. And I would just forget my schedule sometimes. And I had some memory problems. And I used to get quite a few warnings. But I hung in there as long as I could.

R. 51. Plaintiff agreed with the ALJ that it was her mental problems that were the cause of her not being able to work. R. 52. Plaintiff also testified that the only time she received counseling was in high school "because of things I went through in childhood years." R. 52. She continued her narrative as follows:

> But I never admitted any other problems that I had until after I lost my job. That's when I knew something was wrong. So, I admitted to myself, you know, that I should get help. So, I started drinking and smoking to try to cover up the problem -- to run away from the problem. But it never made it any better. So, I check myself into chemical dependency. And then, I graduated from chemical dependency. I have been clean since November [2012] from any alcohol at all or marijuana or whatever.

---

contact with the criminal justice system, increase employment, attain higher levels of education, and secure preferred housing." PROS, http://www.omh.ny.gov/omhweb/pros/ (last visited Jan. 5, 2016).

R. 52. She testified at the administrative hearing that when she was working, she had a lot of mood changes: "sometimes, I would go to work and just, I'd get really depressed—get really down." R. 63. At one job, the director of nursing tried talking to her to "figure out what's going on," and Plaintiff "would just tell her, you know, 'it's too much. I can't take it. It's too much.'" R. 63. She elaborated, stating that she had a hard time focusing and concentrating. R. 63. At Saint Anne's, the director of nursing left, and her replacement would not let Plaintiff take time off from the night shift to care for her son, whom she learned was also suffering from a mental disability. Further, she felt overwhelmed, especially when she tried to press charges against her son's father and the verdict was not guilty.

On June 28, 2012,[2] Plaintiff applied for both SSDI and SSI benefits, claiming to be disabled beginning on September 1, 2011. R. 171, 173. She claimed to be disabled as a result of anxiety, depression, a learning disability, possible bi-polar, post-traumatic stress disorder, and mood swings. R. 193.

At the administrative hearing, Plaintiff testified that she lived in a duplex with her 4-year-old son who attends preschool three hours a day. R. 55–56. Her daily routine began with walking her son to daycare, which was down the street from her house. R. 56. She stated she never had a driver's license because she was afraid to drive. R. 57. She then attended her PROS "classes" three days a week, and then went home afterwards to clean.[3] R. 58. On the days she did not attend PROS classes, she used to go to the

---

[2] Plaintiff's filing resulted in a "protective filing date" of May 17, 2012. R. 189; Program Operations Manual System ("POMS") GN 00204.010 Jul. 23, 2015.

[3] Later in the hearing, Plaintiff testified that the classes consisted of a nutritionist class called "Mood and Food," and an anxiety and anger management, and self-esteem class. R. 87.

YMCA to work out, but because of back pain, no longer does. R. 58. She sometimes did not clean as well as she should because she had a hard time focusing on different tasks at home. R. 58. She also sometimes became overwhelmed with caring for her son and only cooked sometimes. R. 58. About meals, she testified:

> But I didn't cook all last week. I just was not in the mood to do anything. So, I would just make a sandwich. Peanut butter—we would have peanut butter and jelly for dinner because there's [sic] days when I get so tired I just don't want to do anything.

R. 58–59. She also testified that some days, she and her son stay in the house because she was having a panic attack. R. 59 ("Sometimes, I think something's going to happen to us if we go out the door."). She testified that she was attending anxiety classes. R. 59.

Plaintiff further testified that she usually goes to the grocery store once a week. She used to go once a month, but because she was having anxiety about being in the store, she had to increase the frequency of her visits to decrease the time in the store. R. 60. She related that

> the other day, I went to the grocery store. And I noticed, I could not stay in there more than probably 12 minutes. I had to go in and just grab what I need[ed], get home, just hurry up and get in there and get out, because I feel [sic] like just screaming if I stay in there very long.

R. 60-61. She testified she used to take her son to the Strong® National Museum of Play, but the visits became overwhelming to her. R. 62–63. She also stated she attends church and "[t]hat helps a little—well, a lot. I think so." R. 63.

The ALJ took testimony from a vocational expert, Cyndee Burnett ("VE"), who testified about three prior jobs Plaintiff held. R. 76–77. The VE testified that Plaintiff could not perform her past work, but that there were other jobs she could perform: housekeeper (DOT code 323.687-014); laundry worker (DOT code 302.685-010); and mailroom clerk

(DOT code 209.687-026). R. 77–78. The ALJ then asked the VE whether Plaintiff could perform those jobs if she had to have the option at half hour intervals to sit, or stand, and the VE responded that the housekeeper and laundry worker jobs would thereby be eliminated. R. 78. The VE then responded to the ALJ's question about whether there were other jobs such an individual could perform with the sit and stand limitation, and the VE responded with these jobs: routing clerk (DOT code 222.687-022); and office helper (DOT code 239.567-010). R. 78.

The ALJ then asked Plaintiff if she had any questions for the VE, and when Plaintiff responded she did not know what to ask, the ALJ then asked the VE the following question and received the following answer:

> Q. Ms. Burnett, if the individual in my hypothetical was off-task 20 percent of the time, would that eliminate all work?
>
> A. Yes, it would.
>
> Q. And if the individual were to miss two or more days a month of work, would that eliminate all work?
>
> A. Yes, it would.
>
> Q. Would tardiness two or more time a week eliminate all work?
>
> A. Yes, it would.

R. 80.

## MEDICAL EVIDENCE

Plaintiff testified that she now weighs 360 pounds. R. 73. She testified that when she weighed 385 pounds, her back pain was a ten on a scale of one to ten, and when she lost 25 pounds, it went to a seven on a scale of one to ten. R. 72.

On May 23, 2012, Plaintiff underwent a mental health evaluation by Cheryl Chiappone, MHC, at Unity Hospital.[4] R. 367–78. Ms. Chiappone's diagnosis was as follows:

Axis I  Dx: 303.90 Alcohol Dependence By: Chiappone MHC, Cheryl I

Primary Dx: 300.02 Generalized Anxiety Disorder
(Includes Overanxious Disorder of Childhood) By:Chiappone MHC, Cheryl I

Axis II Dx:799.9 Diagnosis Deferred on Axis II By:Chiappone MHC, Cheryl I

Rule out – Dx: 296.80 Bipolar Disorder Not Otherwise Specified By: Chiappone MHC, Cheryl I

Rule out – Dx: 309.81 Posttraumatic Stress Disorder By:Chiappone MHC, Cheryl I

R. 367. Ms. Chiappone determined that Plaintiff was only partially compliant with her medication regime and noted that she had a "negative reaction to antidepressant (unable to state medication name) states she stopped in the beginning of May." R. 367. In her analysis, Ms. Chiappone wrote:

Christina is a 32 year old African American Female, Single Parent to two children. Christina is reportedly self referred to work on addressing history of symptoms and ongoing struggles which interfered with daily function in both occupational and social areas. Christina noted to present as anxious in session, tangential and overproductive speech. Writer unable to complete all feilds [sic] of information present due to lack of time available to obtain, writer to provide follow-up appointment to gain additional information. Patient complaint of symptoms including depressed moods, poor sleep, anxiety, excessive worry, checking behaviors, mood swings. Patient reports history of trauma experience and exhibits possible symptoms of PTSD related

---

[4] The initials MHC may stand for mental health counselor, the practice of which in New York requires a license, unless exempt, from the Office of the Professions, New York State Department of Education. The applicant for such a license must "present evidence of receiving a master's or doctoral degree in counseling…." NYS Mental Health Counseling: License Requirements, http://www.op.nysed.gov/prof/mhp/mhclic.htm (last visited Jan. 6, 2016).

to experience. Christina reports history of substance abuse, is presently in treatment to address Chemical Dependency issues.

Based on Modified MINI results patient noted to mark "yes" on all fields/Sections of outcome measure. Writer inquired of responses to which patient reported "I marked what was true." Due to tangential presentation and response in Initial Evaluation symptoms present are consistent with Anxiety Disorders including Overgeneralized Anxiety Disorder. Future rule out includes Bi-polar disorder due to patient complaint of symptoms relating to mania and depression.

M. H. Clinical Formulation Therapist: Writer to provide followup evaluation to work on additional information. Requests sent to PCP and previous providers through. Writer to present to treatment team regarding case, appropriateness for referral to Psychiatric Evaluation upon patient and clinician decision to admit for treatment.

R. 377.

On July 9, 2012, Plaintiff was seen again by Ms. Chappone, R. 348–62, who noted

the reason for the visit as follows:

Christina brings her son into session this interferes with some of treatment as he requires her attention throughout. Her focus is tangential and she has poor attention within session. Female presenting to treatment to address symptoms related to Anxiety and Depression, history of trauma. Patient presents in session as overwhelmed and anxious, report struggles with mood stability. Patient often over shares per her report with others. Writer to continue individual psychotherapy with use of Cognitive Behavioral Skills and Person Centered Approach. Patient has attended Psychiatric Evaluation. Patient is scheduled for next individual appointment in one week.

R. 348.

Also on July 9, 2012, Plaintiff was seen by Dr. Reddy for a psychiatric evaluation.

R. 436–44. Dr. Reddy's report adopted the diagnoses previously made by Ms. Chiappone

from her report, adding in the narrative portions of his report that Plaintiff had untreated

mental health symptoms of anxiety, depression, mania, personality disorder, and psycho-

sis. R. 438. The "Occupational History" portion of Dr. Reddy's report, contains the following:

> [Plaintiff] states she worked multiple jobs since the age of 14. Currently Unemployed. Was working as a Certified Nursing Assistance [sic] at St Ann's for approximately eight years until September 2011. She reports difficult in focus and attending schedule, anxiety at work. Age 20 year 2000-2002 working at Strong Hospital as a unit support sister -> lost job due to crack cocaine use. Westgate nursing Home early 20s lost job due to crack cocaine -> also involved in an extremely [sic] relationship. Began working at age 14. Dr. Reedy adds Currently unemployed.

R. 441.

Dr. Reddy formulated a treatment plan including discontinuing the antidepressant Celexa, starting Plaintiff on Geodon to address hallucinations and mood swings, and Zoloft. R. 443. He ordered a follow up appointment on one month. R. 443. Dr. Reddy assigned Plaintiff a GAF score of 50.[5] R. 436. On July 20, in a visit with Ms. Chiappone, Plaintiff reported, *inter alia*, she had been unable to move and leave the house for three days over concern that her son was now on medication. R. 344. Ms. Chiappone assessed that Plaintiff's GAF score was 52. R. 343.

On August 16, 2012, Plaintiff saw Dr. Reddy again. He noted in his report that Plaintiff told him

> that she is attending Trauma gropus [sic] and anger management gropus [sic]. She is puzzling about her sxs pass. She reports noc ahnges inher sxs [sic] on her current meds. She reports that she has been feeling that things are moving, the doors [sic] knobs are moving hearing voices and noises.

---

[5] According to the National Institutes of Health, "Global Assessment of Functioning (GAF) is a scoring system for the severity of illness in psychiatry." Guidelines for rating Global Assessment of Functioning (GAF), http://www.ncbi.nlm.nih.gov/pmc/articles/PMC3036670/ (last visited Jan. 6, 2016). The Court notes the lack of authority "holding that a GAF score—in and of itself—demonstrates that an impairment significantly interferes with a claimant's ability to work." *Parker v. Comm'r of Soc. Sec. Admin.*, No. 2:10-CV-195, 2011 WL 1838981, at *6 (D. Vt. May 13, 2011).

R. 431. Dr. Reddy increased the dosages of Geodon and Zoloft. R. 431.

On August 24, 2012, Plaintiff underwent a consultative psychiatric examination by Christine Ransom, Ph.D., a psychologist. R. 395–98. Dr. Ransom diagnosed the following:

| | | |
|---|---|---|
| Axis I | | Bipolar disorder with psychotic features, currently moderate to marked. |
| | | Posttraumatic stress disorder, currently moderate to marked. Obsessive compulsive disorder, currently moderate. |
| | | Alcohol, marijuana and cocaine dependence, currently in remission. |
| Axis II | | Probable borderline intellectual capacity. |
| Axis III | | Back pain, knee pain, foot pain and high blood pressure. |

R. 398.

On September 17, 2012, Plaintiff was examined by Harbinder Toor, M.D., Nuclear Medicine, chiefly concerning her lower back pain. R. 399–402. Dr. Toor's diagnosis was as follows:

1. History of obesity.
2. History of lower back pain.
3. History of hypertension.
5. History of learning difficulty.
6. History of bipolar disorder.
7. History of anxiety.
7. History of depression.
8. History of posttraumatic stress disorder.

R. 401. Dr. Toor's prognosis for Plaintiff was "guarded" and he concluded that Plaintiff

has moderate limitation standing and walking a long time. She has moderate limitation sitting a long time. She has moderate-to-severe limitation bending and lifting. Pain and obesity interfere with her physical routine and

sometimes with her balance. She can be evaluated by a psychologist or psychiatrist.[6]

R. 402.

On September 20, 2012, Plaintiff returned to Dr. Reddy reporting that she had stopped taking Geodon and Zoloft due to nausea. R. 425. Dr. Reddy discontinued Zoloft and replaced it with Paxil, and continued the Geodon. R. 425.

The Record contains papers signed by "E. Kamin, 38," and dated September 25, 2012. R. 113. Plaintiff describes E. Kamin as a psychiatrist, and the ALJ refers to E. Kamin, M.D., as "the state agency psychiatric consultant...." R. 30. The papers, R. 107–15, pertain to a non-examining assessment of Plaintiff's mental and physical impairments. Dr. Kamin concluded that Plaintiff's symptoms did not meet the listings under the "Psychiatric Review Technique (PRT)" and includes references to Appendix 1 to Subpart P of Part 404, 12.00 Mental Disorders, of the Social Security Regulations. R. 108. He reached the opinion that Plaintiff did not meet any of the listings for mental disorders. Dr. Kamin further concluded that Plaintiff's ability to remember locations and work-like procedures was moderately limited, as was her ability to understand and remember very short and simple instructions. R. 111. Dr. Kamin determined that Plaintiff had a marked limitation in her ability to understand and remember detailed instructions, and suffered from borderline cognitive ability. R. 111. Dr. Kamin also determined that Plaintiff had moderate limitations in her ability to carry out very short and simple instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, sustain an ordinary routine with-

---

[6] Evidently, Dr. Toor was unaware of the August 24 psychiatric examination.

out special supervision, work in coordination with or in proximity to others without being distracted by the, and make simple work-related decisions. Dr. Kamin concluded that Plaintiff was markedly limited in her ability to carry out detailed instructions.

Suzanne Nieri-Quinn, SDM, who also performed a non-examining assessment of Plaintiff on September 25, 2012, assessed her residual functional capacity and concluded that she could occasionally lift or carry up to 20 pounds, frequently lift or carry up to 10 pounds, stand or walk about six hours in an eight hour workday, sit about six hours in a normal work day, and had no limitations regarding pushing, or pulling. She also concluded that Plaintiff could climb ramps, stairs, ladders, ropes and scaffolds occasionally, could occasionally balance, and could occasionally stoop, kneel, and crouch. R. 110-11.

## STANDARDS OF LAW

The pertinent statute states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The issue to be determined by this Court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir.1998). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* For purposes of the Social Security Act, disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Schaal*, 134 F.3d at 501.

The SSA has promulgated administrative regulations for determining when a claimant meets this definition. First, the SSA considers whether the claimant is currently engaged in substantial gainful employment. If not, then the SSA considers whether the claimant has a "severe impairment" that significantly limits the "ability to do basic work activities. If the claimant does suffer such an impairment, then the SSA determines whether this impairment is one of those listed in Appendix 1 of the regulations. If the claimant's impairment is one of those listed, the SSA will presume the claimant to be disabled. If the impairment is not so listed, then the SSA must determine whether the claimant possesses the "residual functional capacity" to perform his or her past relevant work. Finally, if the claimant is unable to perform his or her past relevant work, then the burden shifts to the SSA to prove that the claimant is capable of performing "any other work."

*Schaal*, 134 F.3d at 501 (citations omitted). Under the regulations, a treating physician's opinion is entitled to controlling weight, provided that it is well-supported in the record:

If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 416.927(c)(2); 20 C.F.R. § 404.1527(c)(2). However, "[w]hen other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)(*citing* 20 C.F.R. § 404.1527(c)(4), formerly designated as 20 C.F.R. § 404.1527(d)(4)). Nevertheless,

[a]n ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give to the opinion. 20 C.F.R. § 404.1527[(c)](2). Among those factors are: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. *Id.* The regulations also specify that the Commis-

sioner 'will always give good reasons in [her] notice of determination or decision for the weight [she] give[s] [claimant's] treating source's opinion.' *Id.*; *accord* 20 C.F.R. § 416.927[(c)](2); *see also Schaal*, 134 F.3d at 503-504 (stating that the Commissioner must provide a claimant with "good reasons" for the lack of weight attributed to a treating physician's opinion).

*Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). An ALJ, though, is not required to explicitly discuss each factor, as long as his "reasoning and adherence to the regulation are clear." *Atwater v. Astrue*, 512 Fed. Appx. 67, 70, 2013 WL 628072 at *2 (2d Cir. Feb. 21, 2013) ("Atwater challenges the ALJ's failure to review explicitly each factor provided in 20 C.F.R. § 404.1527(c). We require no such slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear.") (citation omitted).

Administrative Law Judges are required to evaluate a claimant's credibility concerning pain according to the factors set forth in the Commissioner's regulations, which state, in relevant part:

> In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. By objective medical evidence, we mean medical signs and laboratory findings as defined in § 404.1528 (b) and (c). By other evidence, we mean the kinds of evidence described in §§ 404.1512(b)(2) through (8) and 404.1513(b)(1), (4), and (5), and (d). These include statements or reports from you, your treating or nontreating source, and others about your medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how your impairment(s) and any related symptoms affect your ability to work. We will consider all of your statements about your symptoms, such as pain, and any description you, your treating source or nontreating source, or other persons may provide about how the symptoms affect your activities of daily living and your ability to work.

> ***

> In evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical

history, the medical signs and laboratory findings and statements about how your symptoms affect you. (Section 404.1527 explains how we consider opinions of your treating source and other medical opinions on the existence and severity of your symptoms, such as pain.) We will then determine the extent to which your alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how your symptoms affect your ability to work.

20 C.F.R. § 404.1529(a); 20 C.F.R. § 416.929(a). The regulation further states, in relevant part:

Factors relevant to your symptoms, such as pain, which we will consider include:

(i) Your daily activities;

(ii) The location, duration, frequency, and intensity of your pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3); 20 C.F.R. § 416.929(c)(3). However, while an ALJ is required to consider these factors, he is not required to explicitly discuss each one. *See, Pellam v. Astrue*, 508 Fed.Appx. 87, 91, 2013 WL 309998 at *3 (2d Cir. Jan. 28, 2013) ("The ALJ did not apply an incorrect legal standard when judging the credibility of Pellam's testimony. Although the ALJ did not explicitly discuss all of the relevant factors, Pellam has failed

to point to any authority requiring him to do so. In any event, the ALJ cited the applicable regulation, 20 C.F.R. § 404.1529, explicitly mentioned some of the regulatory factors (such as Pellam's limited use of pain medication), and stated that he considered all of the evidence required by § 404.1529."). If it appears that the ALJ considered the proper factors, his credibility determination will be upheld if it is supported by substantial evidence in the record. *Id.*

**DISCUSSION**

Plaintiff maintains that the Commissioner's ruling must be reversed for the following reasons: (1) The ALJ failed to adhere to her heightened duty to develop the record when dealing with a pro se client; (2) The ALJ failed to develop the record regarding Ms. Jackson's intellectual capacities; and (3) The ALJ Diminished the Severity of Ms. Jackson's Symptoms Based on Mischaracterizations of the Record. The Commissioner responds that no further development of the record was necessary because "the evidence in this record was adequate for the ALJ to reach a decision, and because substantial evidence supported the ALJ's analysis, the ALJ was not obligated to seek further evidence." Comm'r Mem. of Law 18, Dec. 18, 2015, ECF No. 11-1. Further, responding to point three, the Commissioner states that, "[t]he ALJ properly applied the Commissioner's two-step credibility framework… [and] also properly considered all of the regulatory factors outlined at 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) and Social Security Ruling (SSR) 96-7p in finding Plaintiff's subjective complaints less than fully credible." *Id.* 26.

*Development of the record—ALJ's duty to inform Plaintiff to obtain further evidence*

Relying in part on *Camilo v. Comm'r of the Soc. Sec. Admin.,* 11 Civ. 1345(DAB)(MHD), 2013 WL 5692435, *22 (S.D.N.Y. Oct. 2, 2013), Plaintiff argues that

the ALJ had an enhanced duty to develop the record in light of the evidence showing Plaintiff had a psychiatric impairment. She cites the following failures: the ALJ failed to inform Plaintiff "of her skepticism regarding the severity of [Plaintiff's] imparments," and the ALJ did not "advise [Plaintiff] of the advisability of obtain[ing] a treating source statement in light of that skepticism." Pl.'s Mem. of Law 18, Aug. 24, 2015, ECF No. 8-1. Here Plaintiff cites to *Cruz v. Sullivan*, 912 F.2d 8, 12 (2d Cir. 1990). In *Cruz*, the Second Circuit wrote the following:

> In the instant case, the ALJ determined that the opinions and reports of Cruz's other treating and consulting physicians contradicted Dr. Gheissary's opinion. Although the ALJ sent a letter to Dr. Gheissary four days after the hearing, requesting a more detailed explanation of the causes of Cruz's inability to work, he clearly failed to advise Cruz, a *pro se* claimant, that he should obtain a more detailed statement from Dr. Gheissary. Had Cruz been apprised of the ALJ's skepticism, he, unlike the ALJ, may have been persistent about obtaining his medical records and a detailed statement from Dr. Gheissary.

*Cruz*, 912 F.2d at 12. The *Cruz* opinion concluded that, "when the claimant appears *pro se*, suffers ill health and is unable to speak English well, as in this case, we have 'a duty to make a 'searching investigation' of the record' to make certain that the claimant's rights have been adequately protected." *Cruz*, 912 F. 2d at 11 (citations omitted). In her memorandum, Plaintiff maintains that, "it is clear that the ALJ failed to inform Mr. Biro [sic] of his skepticism regarding the level of support for his claim," Pl.'s Mem. of Law 19, and concludes that Plaintiff may have failed to obtain a treating source opinion to support her claim "because she did not know or understand that such an opinion would support her claim." *Id.*

Here, the ALJ gave less weight to Dr. Ransom's statement that Plaintiff will have moderate difficulty following and understanding simple instructions, and moderate-to

marked limitations with complex directions and relating to others. R. 30. The ALJ cited to Dr. Ransom's August 2012 report, which explicitly states that it was a consultative examination. Nevertheless, Plaintiff argues that if she understood that the ALJ was going to give less weight to the consultative examiner's report, perhaps she would have obtained more evidence from Dr. Reddy or Dr. Noronha. Pl.'s Mem. of Law 20.

However, in *Cruz*, the Second Circuit admonished that an ALJ is required to obtain additional information from a treating source "if necessary to resolve the inconsistency [between the opinions of the treating source and other sources]…." *Cruz*, 912 F.2d at 12. The inconsistency here is between an examining consultative medical source, and a non-examining consultative source. Plaintiff would have this Court rule that an ALJ has an affirmative duty to encourage a *pro se* plaintiff diagnosed by a treating physician with alcohol dependence and generalized anxiety disorder to obtain evidence supporting a disability determination when the ALJ's opinion will discount one consultative examiner's report over another's. *Cruz* does not support Plaintiff's argument, since it involved an ALJ discounting a treating source's opinion. *Cruz*, 912 F.2d at 12 (2d Cir. N.Y. 1990) ("We have repeatedly stated that when the ALJ rejects the findings of a treating physician because they were conclusory or not supported by specific clinical findings, he should direct a pro se claimant to obtain a more detailed statement from the treating physician."). The Court rejects Plaintiff's contention that the ALJ had an affirmative duty to obtain evidence of Plaintiff's disability.

On Plaintiff's representation that the law permitted a plaintiff to submit new evidence before the district court pursuant to 42 U.S.C. § 405, the Court permitted Plaintiff additional time to submit an additional report from Dr. Reddy, which she failed do. Plaintiff

has also not convinced the Court that the law permits the submission of new evidence to the district court on review of the AJL's decision. At best, new evidence might trigger a remand under sentence six of § 405(g). Therefore, the Court will not consider the retrospective opinion of the social worker submitted by Plaintiff.

Plaintiff also argues that the record was incomplete, and thus the ALJ failed in her duty to ensure a complete record before deciding the case. Pl.'s Mem. of Law 20. Plaintiff points out gaps in her treatment for chemical dependency. For an example, she points out that Ms. Chiappone's notes from July 20, 2012, indicate that another therapy session was scheduled for the following week. However, the next treatment note from Ms. Chiappone is dated February 7, 2013. Further, Plaintiff points out that she did not complete chemical dependency treatment until May 7, 2013, therefore notes between February 7, 2013, and May 7, 2013, must also be missing. In addition, Plaintiff argues that the ALJ made no effort "to determine if school records were missing from the administrative record." Pl.'s Mem. of Law 21.

The Second Circuit made clear in *Cruz* that the ALJ

> has a duty to adequately protect a *pro se* claimant's rights "by ensuring that all of the relevant facts [are] sufficiently developed and considered." *Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir. 1980). While the administrative hearing is not designed to be adversarial, *Donato v. Secretary of the Dep't of Health & Human Serv.*, 721 F.2d 414, 418 (2d Cir. 1983), when the claimant is unrepresented, the ALJ is under a heightened duty "'to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts,'" *Echevarria*, 685 F.2d at 755 (quoting *Hankerson*, 636 F.2d at 895).

*Cruz*, 912 F.2d at 11. The Commissioner's regulation spells out her duty to obtain medical records:

> Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application. We will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports.

20 CFR 404.1512(d).

Although Plaintiff has identified possible gaps in the medical records, she has not shown how potential therapy records from Ms. Chiappone, or records from Plaintiff's school years, are relevant to the disability determination. In fact, the prior argument was that the ALJ should have encouraged Plaintiff to obtain further medical evidence from Dr. Reddy (for psychiatric issues) or Dr. Toor (for physical issues), not from Ms. Chiappone.

Additionally, although Plaintiff details the possibly missing school records dating back to 1992, she fails to argue how any of those school records would be relevant to a disability determination in 2012. As the Commissioner points out in her memorandum, at 21, the school records that were presented (dating from March 24, 1998) showed only that Plaintiff was learning disabled and would be placed in a special class of 15 pupils to one teacher. R. 332. A written assessment attached to the record indicted that Plaintiff was "hard working and finishes all of her assignments. She is on track to graduate this year (June '98)." R. 335. At the time, her grade point average was 2.30 and the writer observed that "she also works part time at a job." R. 335. The report also noted that her cognitive functioning was "[l]ow average to borderline." R. 337. It also noted that her written language was at a seventh grade level. R. 342. Nothing in the record from the Roch-

ester City School District hints at the existence of evidence showing that Plaintiff would

meet one of the listings.

*Development of the Record—ALJ's duty to further develop the record regarding Plaintiff's anxiety*

Plaintiff, relying in part on Social Security Ruling ("SSR") 85-15, argues that the

ALJ failed in her duty to assist Plaintiff to develop the record with regard to her anxiety,

for which she was receiving treatment from Dr. Reddy. Pl.'s Mem. of Law 23. SSR 85-15

states in pertinent part as follows:

> The basic mental demands of competitive, remunerative, unskilled work in-
> clude the abilities (on a sustained basis) to understand, carry out, and re-
> member simple instructions; to respond appropriately to supervision,
> coworkers, and usual work situations; and to deal with changes in a routine
> work setting. A substantial loss of ability to meet any of these basic work-
> related activities would severely limit the potential occupational base. This,
> in turn, would justify a finding of disability because even favorable age, ed-
> ucation, or work experience will not offset such a severely limited occupa-
> tional base.

SSR 85-15. On this issue, Plaintiff argues the following:

> Given that Ms. Jackson was treating with Dr. Reddy, her treating psychia-
> trist, for anxiety and both consultant examiner Dr. Ransom and state agen-
> cy review psychologist found Ms. Jackson had stress related problems
> even with simple tasks, SSR 85-15 directed the ALJ to undertake an inquiry
> into Ms. Jackson's individualized reaction to and intolerance of stress. Ab-
> sent any testimony in reference to her stressors, such an inquiry was sub-
> stantially frustrated to the detriment of Ms. Jackson's claim. Given the ALJ's
> heightened duty to assist Ms. Jackson in producing testimony concerning
> her impairments, this error required remand for further proceedings.

Pl.'s Mem. of Law 23. The Commissioner responds as follows:

> Regarding Plaintiff's argument the ALJ did not obtain "any" testimony in ref-
> erence to Plaintiff's anxiety, Pl. Br. 18, 23, this, too, is refuted by the evi-
> dence of record. Specifically, Plaintiff testified regarding the impact of her
> anxiety on her past job, Tr. 63-64, 75; regarding therapy classes related to
> anxiety, Tr. 50, 59; regarding symptoms of mental impairments, Tr. 57, 58-
> 59, 60-61, 62-63; and regarding prescription medications to treat mental
> health impairments, Tr. 53. The ALJ did not fail to follow-up with passing

references to symptoms unaccompanied by medical evidence, or fail to question Plaintiff about symptoms that led her to leave her past job. *See Hankerson v. Harris*, 636 F.2d at 895-896. Additionally, ALJ had a full picture of Plaintiff's treatment, activities of daily living, and social functioning capacity through Plaintiff's own admissions to consultative examiners. Accordingly, Plaintiff fails to show she was not provided a "full and fair hearing" due to gaps in the record.

Comm'r Mem. of Law 24–25. Plaintiff's memorandum of law, at 24, acknowledges that where the administrative record has no obvious gaps, and where the ALJ already possess a complete medical history, the ALJ is not under any obligation to seek additional evidence before rejecting a benefits claim. The Second Circuit, in *Perez v. Chater*, 77 F.3d 41 (2d Cir. 1996), addressed the ALJ's duty to develop the record, writing:

> Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record. *Echevarria v. Secretary of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982). This duty exists even when the claimant is represented by counsel or, as here, by a paralegal. *See Baker v. Bowen*, 886 F.2d 289, 292 n.1 (10th Cir. 1989) ("The ALJ . . . has the affirmative duty to fully and fairly develop the record regardless of whether the applicant is represented by an attorney or a paralegal."). The Secretary's regulations describe this duty by stating that, "before we make a determination that you are not disabled, we will develop your complete medical history . . . [and] will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports." 20 C.F.R. § 404.1512(d). The regulations also state that, "when the evidence we receive from your treating physician . . . or other medical source is inadequate for us to determine whether you are disabled, . . . we will first recontact your treating physician . . . or other medical source to determine whether the additional information we need is readily available." 20 C.F.R. § 404.1512(e).

*Perez*, 77 F.3d at 47. Plaintiff is arguing that the medical evidence before the ALJ was inadequate for the ALJ to make a determination on her disability, stating the following:

> Specifically, the ALJ found that Ms. Jackson could perform simple routine, repetitive work because: (1) she worked as a CNA for seven years; (2) there were no records that pointed to a particular incident that caused Ms. Jackson's learning abilities to decline; and (3) no IQ testing were in the school records to accurately measure Ms. Jackson's cognitive ability. (Tr.

27, 28). None of these arguments are based on substantial evidence.

Pl.'s Mem. of Law 25. The medical evidence in the administrative record, including the

records from Dr. Reddy, Plaintiff's treating psychiatrist, substantially supports the ALJ's

determination that Plaintiff was capable of performing some light work.

*ALJ's Characterization of the Record*

Plaintiff contends that the ALJ mischaracterized her subjective statements and the

evidence regarding severity of her symptoms. Pl.'s Mem. of Law 26. The Commissioner

responds that the argument

> the regulations set forth a two-step process to evaluate a claimant's testi-
> mony regarding his symptoms. First, the ALJ must consider whether the
> claimant has a medically determinable impairment which could reasonably
> be expected to produce the pain or symptoms alleged by the claimant.
> Second, if the ALJ determines that the claimant is impaired, he then must
> evaluate the intensity, persistence, and limiting effects of the claimant's
> symptoms. If the claimant's statements about his symptoms are not sub-
> stantiated by objective medical evidence, the ALJ must make a finding as to
> the claimant's credibility. Such an evaluation of a claimant's credibility is en-
> titled to great deference if it is supported by substantial evidence.

> In assessing the claimant's credibility, the ALJ must consider all of the evi-
> dence in the record and give specific reasons for the weight accorded to the
> claimant's testimony. The regulations require the ALJ to consider not only
> the objective medical evidence, but also:

> 1. The individual's daily activities;

> 2. The location, duration, frequency, and intensity of the individual's pain or
> other symptoms;

> 3. Factors that precipitate and aggravate the symptoms;

> 4. The type, dosage, effectiveness, and side effects of any medication the
> individual takes or has taken to alleviate pain or other symptoms;

> 5. Treatment, other than medication, the individual receives or has received
> for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to re-lieve pain or other symptoms; and

7. Any other factors concerning the individual's functional limitations and re-strictions due to pain or other symptoms.

*Murphy v. Barnhart*, No. 00 Civ. 9621(JSR)(FM), 2003 WL 470572, *10-*11, 2003 U.S. Dist. LEXIS 6988 (S.D.N.Y. Jan. 21, 2003) (citing 20 C.F.R. § 404.1529(c)) (other cita-tions and internal quotations omitted).

Plaintiff asserts that the ALJ mischaracterized the evidence of her activities of daily living. The ALJ noted in her decision that, "a neighbor will get her out of the house weekly to go to places such as the grocery store." R. 24. However, the ALJ did not comment on Plaintiff's testimony, described above, about being unable to remain in the grocery store for more than "probably 12 minutes" due to her anxiety. R. 61. The ALJ also wrote that Plaintiff "maintained most therapy visits and went to her classes three times per week...." R. 24. The ALJ failed to note that the classes were actually group therapy sessions, not educational classes in the traditional sense. R. 450. Nevertheless, the ALJ's decision ad-dressed other factors of daily living, and her decision does not turn on these two items pointed out by Plaintiff.

Plaintiff also testified about her anxiety, which she points out is supported by ob-jective medical evidence, such as being maintained on psychotropic medications, and reporting to treating sources that she suffered occasional auditory and visual hallucina-tions, paranoia, anxiety, depression, and tangential thoughts, despite the medication. R. 344 (July 20, 2012, "Patient presents in session as overwhelmed and anxious...."); 348 (July 10, 2012, "Patient presents in session as overwhelmed and anxious, reports strug-gles with mood stability."); 416 (March 21, 2013, "Thought Process: Paranoid ideation;

Perceptions: Audible thoughts (Comment: decreased).”); 422 (February 11, 2013, “Thought Process: Paranoid ideation. Perceptions: Audible thoughts.”); 434 (August 16, 2012, “Thought Process: Paranoid ideation Perceptions: Audible thoughts, Visual hallucinations.”); 443 (July 9, 2012, “Thought Process: Unremarkable; Perceptions: Audible thoughts, Visual hallucinations.”). However, the ALJ concluded that in the activities of daily living, Plaintiff had only mild restrictions, relying on the fact that she did not have any reported psychiatric hospitalizations from the onset date through the hearing date, “and the record does not show repeated episodes after the alleged onset date…[i]n fact, no such episode exists, which attests to a lack of disabling severity.” R. 25.

## CONCLUSION

Defendant’s motion for judgment on the pleadings granted and Plaintiff’s motion for judgment on the pleadings is denied. The Commissioner’s decision is affirmed and the Clerk of the Court is directed to close this action.

So Ordered.

Dated:  March 21, 2016
        Rochester, New York

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge